UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EDDIE GARCIA,

                  Plaintiff,

        v.

LEWIS TREE SERVICE, INC., and ROBERT
GASTON,

                Defendants.

_____

**DECISION AND ORDER**

6:21-CV-06393 EAW

## INTRODUCTION

Plaintiff Eddie Garcia ("Plaintiff") asserts claims for violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq*. (the "FMLA"), the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq*. (the "ADA"), and the New York State Human Rights Law, N.Y. Exec. Law § 296(1)(a) (the "NYSHRL") against defendants Lewis Tree Service, Inc. ("Lewis Tree") and Robert Gaston ("Gaston") (collectively "Defendants"). (Dkt. 1). Currently pending before the Court is Defendants' motion to dismiss. (Dkt. 11). For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

### I. Factual Background

The following facts are taken from the complaint (Dkt. 1), which the Court accepts as true at this stage of the proceedings.

- 1 -

Plaintiff is a citizen of Pennsylvania. (*Id*. at ¶ 5). Lewis Tree is a New York corporation with its corporate headquarters in Monroe County. (*Id*. at ¶ 7). From 2009 to 2020, Plaintiff was an employee of Lewis Tree. (*Id*. at ¶ 6). Gaston was, at all relevant times, employed as a "manager or supervisor" by Lewis Tree and he had a "supervisory or managerial role over" Plaintiff. (*Id*. at ¶¶ 10-11).

On or about November 6, 2019, Plaintiff was diagnosed with colon cancer. (*Id*. at ¶¶ 23-24). Plaintiff informed Lewis Tree of his cancer diagnosis that same day. (*Id*. at ¶ 26). He also faxed documentation to Lewis Tree after visiting his doctor on or about November 21, 2019, and December 26, 2019. (*Id*. at ¶ 27). Plaintiff further provided Lewis Tree with doctor's notes from each of his chemotherapy treatments beginning on January 21, 2020, and occurring once every other week until June 6, 2020. (*Id*.). On January 21, 2020, when Plaintiff began chemotherapy, his physician wrote a letter to Lewis Tree advising that Plaintiff "should be finished with chemotherapy treatments and able to return to work by the end of June 2020." (*Id*. at ¶ 28 (internal quotation marks omitted)).

Plaintiff was ultimately authorized to return to work by his physician on July 6, 2020. (*Id*. at ¶ 29). However, when Plaintiff's brother, who was also employed by Lewis Tree, "went to the company to turn in Plaintiff's return-to-work medical paperwork on the first day of June of 2020[1]," he was advised that Lewis Tree "had already unilaterally and summarily terminated" Plaintiff. (*Id*. at ¶ 30).

---

[1]     The timing set forth in the complaint is somewhat unclear. Plaintiff states that "after undergoing extensive chemotherapy treatments and self-quarantining until the end of June of 2020," he was "granted permission from his doctor to return to work for Lewis Tree on

Plaintiff immediately called Lewis Tree, believing there had been a misunderstanding. (*Id*. at ¶ 31). He spoke to one of Lewis Tree's secretaries, Yanisha, who advised him that he had been terminated months earlier, "not long after he had given the company notice of his need for job-protected leave." (*Id*. at ¶ 32). Yanisha advised Plaintiff that he had been sent a termination letter via certified mail and he replied that he had never received any such letter. (*Id*. at ¶¶ 33-34). Plaintiff asked what address the letter had been mailed to; the address Yanisha provided was not Plaintiff's address, but was instead "an address for a house on a different part of Plaintiff's street." (*Id*. at ¶¶ 34-35). Plaintiff provided Yanisha with his correct address and requested that the letter be remailed. (*Id*. at ¶ 36). He then noticed that the line had gone silent; as he asked Yanisha if she was still there, the call was disconnected. (*Id*. at ¶ 37). Plaintiff attempted to call back multiple times, but his calls were not answered. (*Id*. at ¶ 38). Since his phone call with Yanisha in or about June of 2020, Plaintiff has been unable to contact Lewis Tree by telephone. (*Id*. at ¶ 39).

## II.  **Procedural Background**

Plaintiff commenced this action on May 20, 2021. (Dkt. 1). Defendants filed the instant motion to dismiss on August 9, 2021. (Dkt. 11). Plaintiff filed opposition papers

---

July 6, 2020." (Dkt. 1 at ¶ 28 (emphasis added)). However, he then claims that his brother took his "return-to-work medical paperwork" to Lewis Tree on June 1, 2020, and that he subsequently had a conversation with a secretary at Lewis Tree "in or about June of 2020." (*Id*. at ¶¶ 30, 39). For purposes of the instant motion, the Court has assumed that Plaintiff learned of his termination in June of 2020.

on October 15, 2021 (Dkt. 17), and Defendants filed their reply on November 5, 2021 (Dkt. 20).

## DISCUSSION

In his complaint, Plaintiff alleges the following causes of action:  (1) interference in violation of the FMLA; (2) retaliation in violation of the FMLA; (3) failure to provide a reasonable accommodation in violation of the ADA; (4) retaliation in violation of the ADA; (5) discrimination in violation of the NYSHRL; and (6) retaliation in violation of the NYSHRL.  (Dkt. 1).  Defendants seek dismissal of each of these claims, arguing that: (1) Plaintiff's NYSHRL claims must be dismissed for lack of subject matter jurisdiction because Plaintiff neither lived nor worked in New York; (2) the Court lacks personal jurisdiction over Gaston and the claims against him are in any event inadequately alleged; and (3) Plaintiff has failed to plausibly allege a violation of the FMLA or the ADA by Lewis Tree.  (Dkt. 13).  The Court considers these arguments below.

## I.   Claims under the NYSHRL

The Court notes initially that Defendants have framed their arguments regarding the NYSHRL as an issue of subject matter jurisdiction.  (*See* Dkt. 13 at 12).  However, Plaintiff appears to brief the issue as arising under Federal Rule of Civil Procedure 12(b)(6), stating that the Court should "[a]ccept the allegations in the complaint as true, and giv[e] every favorable inference therein, without accepting Defendants' evidence submitted outside of the pleadings[.]"  (Dkt. 17 at 10).  The Court thus must determine as a threshold matter

whether its subject matter jurisdiction is implicated by Defendants' argument regarding Plaintiff's failure to plead that he either lived or worked in New York.

"New York State courts lack subject matter jurisdiction over claims brought under the . . . NYSHRL by a non-resident plaintiff, when the alleged discriminatory conduct did not have an 'impact' on the plaintiff . . . within New York State[.]" *Kraiem v. JonesTrading Institutional Servs. LLC.*, 492 F. Supp. 3d 184, 195 (S.D.N.Y. 2020) (citing *Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 289 (2010)). Federal courts considering arguments similar to those raised in this matter have also addressed the issue as one of subject matter jurisdiction. For example, in *Vangas v. Montefiore Medical Center*, 823 F.3d 174 (2d Cir. 2016), the Second Circuit affirmed the district court's dismissal for lack of subject matter jurisdiction a claim under the New York City Human Rights Law (the "NYCHRL").[2] *Id.* at 177 ("The district court separately dismissed Vangas's NYCHRL claim for lack of subject matter jurisdiction and denied Mr. and Mrs. Vangas's COBRA claims on the merits. Those decisions are affirmed."), 182-83 ("Accordingly, because Vangas's termination did not impact her in NYC, the district court properly dismissed the claim and we affirm.").

Based on the foregoing case law, the Court agrees with Defendants that the issue is one of subject matter jurisdiction and applies the corresponding standard. "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court

---

[2]     The NYCHRL applies only to individuals who live or work in New York City, and New York State courts lack subject matter jurisdiction over claims where that requirement is not satisfied. *Hoffman*, 15 N.Y.3d at 290, 292.

may refer to evidence outside the pleadings.   A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Rojas v. Roman Cath. Diocese of Rochester*, 557 F. Supp. 2d 387, 393 (W.D.N.Y. 2008) (alteration omitted and quoting *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000)); *see also Carter v. HealthPort Techs.*, *LLC*, 822 F.3d 47, 57 (2d Cir. 2016) ("[A] defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading."); *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010) ("[I]f subject matter jurisdiction is contested, courts are permitted to look to materials outside the pleadings.").

Here, Plaintiff has not satisfied his burden.   Defendants have submitted to the Court a sworn affidavit from Gaston in which he states that during his employment with Lewis Tree, neither he nor any of the employees he supervised performed any work in New York, but instead they worked exclusively in Pennsylvania.   (Dkt. 12 at ¶ 4).   Plaintiff has come forward with no evidentiary proof to controvert Gaston's statement and, importantly, does not claim that he ever lived or worked in New York.   Instead, he merely argues that because Lewis Tree is a New York corporation, "it is entirely plausible that Plaintiff could have performed work within the State of New York[.]"   (Dkt. 17 at 11).   However, even accepting Plaintiff's argument, mere plausibility is insufficient to defeat a factually supported motion to dismiss for lack of subject matter jurisdiction.   *See Amaya v. Ballyshear LLC*, 340 F. Supp. 3d 215, 219 (E.D.N.Y. 2018) ("'If the affidavits submitted on a fact-based 12(b)(1) motion reveal the existence of factual problems' related to jurisdiction, the plaintiff must present evidence of his own to counter the defendant's

evidence.") (alterations omitted and quoting *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

For these reasons, the Court agrees with Defendants that it lacks subject matter jurisdiction over Plaintiff's NYSHRL claims and those claims are dismissed without prejudice. *See Carter*, 822 F.3d at 54 (a dismissal for lack of subject matter jurisdiction must be without prejudice, because "without jurisdiction, the district court lacks the power to adjudicate the merits of the case").

## II.   Federal Claims Against Gaston

The Court turns next to Defendants' contention that it lacks personal jurisdiction over Gaston. "The requirement that a court have personal jurisdiction flows . . . from the Due Process Clause. . . .   It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982). "On a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, [the] plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Lit.,* 334 F.3d 204, 206 (2d Cir. 2003). "Prior to discovery, a plaintiff may survive a Rule 12(b)(2) motion to dismiss by pleading in good faith legally sufficient allegations of jurisdiction." *DiFillippo v. Special Metals Corp.,* 299 F.R.D. 348, 352 (N.D.N.Y. 2014) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 566 (2d Cir. 1996)). "That is, where a court relies only upon the pleadings and supporting affidavits, a plaintiff need only make

a prima facie showing of personal jurisdiction over a defendant." *Id.* (citing *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 364 (2d Cir. 1986)).

"In general, a 'district court's personal jurisdiction is determined by the law of the state in which the court is located.'" *Mrs. U.S. Nat'l Pageant, Inc. v. Miss U.S. Org., LLC,* 875 F. Supp. 2d 211, 219 (W.D.N.Y. 2012) (quoting *Spiegel v. Schulmann,* 604 F.3d 72, 76 (2d Cir. 2010)). "There are two ways that New York exercises personal jurisdiction over non-residents: general jurisdiction pursuant to [New York Civil Practice Law and Rules ("CPLR") 301] . . . or specific jurisdiction pursuant to [CPLR 302]." *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015) (quotation marks and citation omitted), *aff'd*, 660 F. App'x 43 (2d Cir. 2016). "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state. General jurisdiction, in contrast, permits a court to adjudicate any cause of action against the . . . defendant, wherever arising, and whoever the plaintiff." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). "If personal jurisdiction exists under the forum state's laws, the district court must then determine if the exercise of such jurisdiction complies with federal due process requirements." *Gaymar Indus. Inc. v. FirstMerit Bank, N.A.*, No. 06-CV-70S, 2007 WL 894217, at *3 (W.D.N.Y. Mar. 21, 2007) (citing *Metro Life Ins.*, 84 F.3d at 567).

Plaintiff does not argue that the Court has general jurisdiction over Gaston, nor could he successfully do so. "[A]s it relates to individuals, the . . . [general jurisdiction] inquiry focuses on whether the defendant may fairly be regarded as 'at home' in the forum

state—a location which, according to the Second Circuit, is generally limited to that individual's domicile." *Lebron v. Encarnacion*, 253 F. Supp. 3d 513, 519 (E.D.N.Y. 2017) (citing *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014) ("The paradigm forum for general jurisdiction over an individual is the individual's domicile, his home.")).  It is undisputed that Gaston is domiciled in Pennsylvania and there are no other facts alleged in the complaint suggesting that this is the exceptional case in which the Court can exercise general jurisdiction over a non-New York resident.

Plaintiff does suggest that the Court can exercise personal jurisdiction over Gaston pursuant to CPLR 302(a)(2).  (*See* Dkt. 17 at 13).  CPLR 302(a)(2) confers personal jurisdiction over defendants who "commit[] a tortious act within the state."  However, nowhere in the complaint is it alleged that Gaston performed any work in New York or supervised Plaintiff in New York, let alone committed a tortious act within New York. Plaintiff further has not alleged any involvement by Gaston in the processing, consideration, or denial of any request for leave, in New York or otherwise.  Accordingly, there is no plausible basis on which to find that CPLR 302(a)(2) allows the Court to exercise personal jurisdiction over Gaston.

Plaintiff also has not identified any allegations that would allow the Court to exercise personal jurisdiction under any other provision of the CPLR, nor made any arguments in that regard.  Plaintiff's federal claims against Gaston are therefore dismissed without prejudice for lack of personal jurisdiction.

## III.   <u>Federal Claims Against Lewis Tree</u>

The Court turns next to Defendants' argument that Plaintiff has failed to state a claim under either the FMLA or the ADA as to Lewis Tree.  Defendants seek dismissal of these claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Dkt. 13 at 24).  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotations and citations omitted).  "To state a plausible claim, the

complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

### A.    FMLA Claims

"The FMLA provides generally that a covered employer is required to grant an eligible employee up to a total of 12 weeks leave during any 12-month period for personal or family needs indicated in the act." *Coutard v. Municipal Credit Union*, 848 F.3d 102, 108 (2d Cir. 2017) (citing 29 U.S.C. § 2612(a)).   "To ensure the availability of its rights, the FMLA makes it illegal for employers to: (1) 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right' provided under the FMLA; or (2) 'discharge or in any other manner discriminate against any individual for opposing any practice made unlawful' by the FMLA." *Prout v. Vladeck*, 316 F. Supp. 3d 784, 800 (S.D.N.Y. 2018) (quoting 29 U.S.C. § 2615(a)).   "The Second Circuit has recognized two types of FMLA claims—'interference' claims and 'retaliation' claims." *Id*. (citing *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004)).   Here, Plaintiff has alleged both an FMLA interference claim and an FMLA retaliation claim.

To succeed on an FMLA interference claim, Plaintiff must plead and prove: "(1) that he is an eligible employee under the FMLA; (2) that defendant is an employer as defined by the FMLA; (3) that he was entitled to leave under the FMLA; (4) that he gave notice to the defendant of his intention to take leave; and (5) that he was denied benefits to which he was entitled under the FMLA." *Daly v. Westchester Cty. Bd. of Legislators*, No.

19-CV-04642 (PMH), 2021 WL 229672, at *11 (S.D.N.Y. Jan. 22, 2021) (alterations omitted and quoting *Ziccarelli v. NYU Hosps. Ctr.*, 247 F. Supp. 3d 438, 447 (S.D.N.Y. 2017)).   Defendants argue that Plaintiff has failed, in this case, to allege "that Lewis Tree denied him FMLA leave, or that Plaintiff did not actually receive any period of unpaid leave to which he would have been entitled under the FMLA."   (Dkt. 13 at 25).   In opposition, Plaintiff contends that because he does not know precisely when he was terminated, it is plausible that the termination occurred during his 12-week FMLA leave period.   (Dkt. 17 at 13).

Plaintiff's argument misapprehends the Rule 12(b)(6) plausibility standard.   While it is true that inferences must be drawn in favor of the non-moving party, it is not sufficient that a plaintiff establish the mere possibility of liability.   "If the court can infer no more than the mere possibility of misconduct from the factual averments—in other words, if the well-pleaded allegations of the complaint have not nudged claims across the line from conceivable to plausible, dismissal is appropriate." *Illinois Nat. Ins. Co. v. Tutor Perini Corp.*, No. 11 CIV. 431 KBF, 2012 WL 2543980, at *2 (S.D.N.Y. June 22, 2012) (quotations omitted).   Here, while it may be conceivable that Plaintiff was terminated within 12 weeks of his request for FMLA leave, none of the facts alleged by Plaintiff make that conclusion plausible.   In particular, the Court is not persuaded by Plaintiff's claim that because he was advised by Yanisha in June of 2020 that he had been terminated "months ago" and "not long after he requested leave" (Dkt. 17 at 13), it is plausible that he was

terminated within 12 weeks of November 6, 2019.[3]  "When examining the facts to ascertain whether a facially plausible claim exists in a complaint, a court is not permitted to consider the surmise, conjecture or speculation of a movant; rather, the court's analysis is relegated to the factual matter contained in the complaint."  *Agarwal v. United States*, No. 14-CV-1873 PAC KNF, 2015 WL 507996, at *6 (S.D.N.Y. Feb. 6, 2015), *adopted*, 2015 WL 887598 (S.D.N.Y. Mar. 2, 2015).  Here, it is speculation on Plaintiff's part that the vague phrasing used by one of Lewis Tree's secretaries in a conversation in June of 2020 implies that he was terminated during his protected leave period.[4]

Moreover, and as Defendants correctly argue, Plaintiff has not plausibly alleged that he was denied any benefits to which he was entitled under the FMLA.  A plaintiff "has no viable FMLA interference claim" if "at the expiration of [his] twelve weeks of FMLA leave, [he] was not medically able to return to work and, therefore, [he] was not entitled to reinstatement to the same or equivalent position."  *Wanamaker v. Town of Westport Bd. of Educ.*, 11 F. Supp. 3d 51, 70 (D. Conn. 2014) (citing 29 C.F.R. § 825.216(c) ("If the employee is unable to perform an essential function of the position because of a physical

---

[3]     Gaston has submitted a sworn affidavit stating that Plaintiff was terminated effective May 22, 2020.  (Dkt. 12 at ¶ 10).  However, the Court cannot and has not considered Gaston's affidavit in connection with Defendants' Rule 12(b)(6) challenge to Plaintiff's FMLA and ADA claims.

[4]     Indeed, it is not even clear from the complaint whether Plaintiff is alleging that Yanisha stated that he had been terminated "not long after he had given the company of his notice of his need for job-protected leave," or if this is Plaintiff's own interpretation of the statement that he had been terminated "months ago."  (Dkt. 1 at ¶ 32).  However, in light of the stage of the proceedings, the Court has assumed that Yanisha actually made this statement.

or mental condition, including the continuation of a serious health condition . . ., the employee has no right to restoration to another position under the FMLA.")).  Here, Plaintiff's own allegations establish that he was not medically cleared to return to work until July 6, 2020, several months after his 12-week FMLA leave period had expired.  (Dkt. 1 at ¶ 29).  He accordingly cannot maintain an FMLA interference claim based on Lewis Tree's failure to restore him to his position.

Plaintiff argues that his FMLA interference claim is nevertheless viable because he "never even received notice of his rights to leave under the FMLA."  (Dkt. 17 at 14; *see also* Dkt. 1 at 8, ¶ 57[5] ("Defendants denied Plaintiff a benefit to which he is entitled under the FMLA in that they refused to provide him with notice of his rights under the FMLA pursuant to 29 U.S.C. § 2615(a)(1).")).  Plaintiff's argument runs counter to well-established Second Circuit precedent.  As another court in this Circuit has explained:

> The failure to provide notice of the terms of the FMLA, "where the lack of notice had no effect on the employee's exercise of or attempt to exercise any substantive right conferred by the Act," is insufficient to state a cause of action.  *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 162 (2d Cir. 1999).  On the other hand, the failure to provide notice that inhibits or restricts an employee from successfully obtaining leave or the right to reinstatement does result in a denial of benefits and can result in a cause of action for interference.

*Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 363 (S.D.N.Y. 2016); *see also Sarno*, 183 F.3d at 162 ("[T]o the extent that Sarno contends that the assumed right to

---

[5]     There is a numbering error in Plaintiff's complaint, in that the numbered paragraphs go from 61 back to 51, and paragraphs 51 through 61 accordingly repeat.  (*See* Dkt. 1 at 9-10).  To avoid confusion, when citing to paragraphs 51 through 61 of the complaint, the Court also provides the page number.

notice stands as an independent right under the Act, and that an employee may sue the employer for failure to give notice even if that failure in no way affected the employee's leave, benefits, or reinstatement, we reject that contention.  The Act makes it unlawful for the employer to impede an employee's actual or attempted 'exercise' of a right provided under subchapter I.  A right to receive notice is not a right that the intended recipient of the notice 'exercise[s].'" (second alteration in original)); *cf.* 29 C.F.R. § 825.301 ("[I]f an employer that was put on notice that an employee needed FMLA leave failed to designate the leave properly, but the employee's own serious health condition prevented him or her from returning to work during that time period regardless of the designation, an employee may not be able to show that the employee suffered harm as a result of the employer's actions.").

Here, Plaintiff has not plausibly alleged that any failure to give notice by Lewis Tree interfered with his substantive FMLA rights.   Plaintiff concedes that he was able to take unpaid leave beginning on November 6, 2020  (Dkt. 1 at 9, ¶ 52), and, as discussed above, he has not plausibly alleged that such leave was terminated within 12 weeks thereafter.  As further discussed above, Plaintiff also has not plausibly alleged that he was denied reinstatement, because he concededly was medically unable to return to work at the end of the FMLA leave period.  Plaintiff thus cannot maintain an interference claim based on an alleged failure to provide notice.  *See Sarno*, 183 F.3d at 161-62 ("Sarno's right to reinstatement could not have been impeded or affected by the lack of notice because his leave was caused by a serious health condition that made him unable to perform the

functions of his position, and it is undisputed that that inability continued for some two months after the end of his 12-week FMLA leave period.  Any lack of notice of the statutory 12-week limitation on FMLA leave could not rationally be found to have impeded Sarno's return to work."  (quotation and alterations omitted)).

Plaintiff also has not plausibly alleged an FMLA retaliation claim.  In order to make a *prima facie* showing of retaliation, Plaintiff "must establish that: 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent."  *Potenza*, 365 F.3d at 168.  In this context, it is sufficient for Plaintiff to show that "his exercise of his FMLA rights was a 'motivating factor' in the termination decision."  *Lievre v. JRM Constr. Mgmt., LLC*, No. 17-CV-4439 (BCM), 2019 WL 4572777, at *11 (S.D.N.Y. Sept. 20, 2019) (quoting *Woods v. START Treatment & Recovery Ctrs., Inc*., 864 F.3d 158, 168-69 (2d Cir. 2017)).

Here, Plaintiff argues that the timing of his termination gives rise to an inference of retaliation.  (*See* Dkt. 17 at 14).  More particularly, he claims that it is plausible that he was terminated within "three to four (4) months" of exercising his right to FMLA-protected leave.  (*Id*.).   This argument suffers from the same flaw discussed above—namely, that while it may be conceivable that Plaintiff was terminated within three to four months of requesting leave under the FMLA, Plaintiff has alleged no facts to render that conclusion plausible.  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent

with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quotations omitted). Here, the allegation that Plaintiff was terminated "months" prior to June 2020, is equally consistent with the conclusion that he was terminated in March or April of 2020 as it is with the conclusion that he was terminated in January or February of 2020. *See Mohan v. UBS Fin. Servs. Inc.*, No. 3:19-CV-00663 (JAM), 2020 WL 1274602, at *3 (D. Conn. Mar. 17, 2020) ("[T]he plausibility standard means that a complaint will fail if it alleges facts that establish nothing more than that a defendant engaged in conduct that is equally consistent with lawful acts as it is with unlawful acts."). Because Plaintiff has not plausibly alleged that he was terminated in close temporal proximity to his request for FMLA leave, *see Lambert v. Trump Int'l Hotel & Tower*, 304 F. Supp. 3d 405, 423 (S.D.N.Y. 2018) ("To establish a causal connection on the basis of temporal proximity, the adverse action must be very close in time to the protected activity. The Second Circuit has not established a bright line to define the outer limits beyond which a temporal relationship is too attenuated. However, the passage of about two months between the protected activity and the adverse action appears to be the approximate dividing line." (quotations omitted and collecting cases)), and because he has not alleged any other facts that would give rise to an inference of retaliatory intent, his FMLA retaliation claim must be dismissed.

### B. ADA Claims

The Court turns next to Plaintiff's claims under the ADA. Plaintiff has alleged both a failure-to-accommodate claim and a retaliation claim under this statute. (*See* Dkt. 1 at

10-12).  "To plead a failure-to-accommodate claim, a plaintiff must allege that '(1) [he] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [his] disability; (3) with reasonable accommodation, [he] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'"  *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 18 (2d Cir. 2015) (quoting *McMillan v. City of N.Y.*, 711 F.3d 120, 125-26 (2d Cir. 2013)).  In addition, "the ADA envisions an interactive process by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated."  *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92, 99 (2d Cir. 2009) (quotations omitted).  An employer's refusal to engage in the interactive process can relieve a plaintiff of the need to "plead the nature of [his] requested accommodation with specificity[.]"  *Giblin v. LeMoyne Coll.*, No. 5:20-CV-00477 LEK ATB, 2021 WL 781363, at *13 (N.D.N.Y.  Mar. 1, 2021).

Defendants argue that Plaintiff's ADA failure-to-accommodate claim fails as a matter of law because Plaintiff "never actually alleges that he even requested an accommodation, or if he did what that accommodation was, when or how or to whom he did so or the way in which it was handled by Lewis Tree, what Lewis Tree allegedly did or did not [do] to engage in the interactive process under the ADA, or any other detail about Lewis Tree's alleged refusal of the accommodation."  (Dkt. 13 at 28).  The Court disagrees.  Reading the complaint in the light most favorable to Plaintiff, it is a reasonable inference that his requested accommodation was for medical leave from November 6, 2019, until he

was finished with chemotherapy.  (*See* Dkt. 1 at ¶¶ 25-28).  "[M]edical leaves of absence

can be an appropriate form of accommodation contemplated by the ADA."  *Micari v. Trans*

*World Airlines, Inc.*, 43 F. Supp. 2d 275, 281 (E.D.N.Y. 1999) (noting that "[w]here the

medical leaves of absence stretch beyond a year, . . . courts have found that the employee,

as a matter of law, cannot perform the essential functions of his position"), *aff'd*, 205 F.3d

1323 (2d Cir. 1999); *see also Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 186 n.6 (2d Cir.

2006) ("[C]ourts considering this question have concluded that a leave of absence may be

a reasonable accommodation where it is finite and will be reasonably likely to enable the

employee to return to work."); *Rogers v. New York Univ.*, 250 F. Supp. 2d 310, 316-17

(S.D.N.Y. 2002) ("The ADA generally recognizes medical leaves as reasonable

accommodations. . . .  Extended leaves may also be found reasonable.").

　　　The Court further rejects Defendants' argument that Plaintiff was required to allege

in more detail how Lewis Tree processed his request.  Again, drawing all inferences in

Plaintiff's favor, Lewis Tree denied Plaintiff's request for medical leave until his

chemotherapy was completed.  That is sufficient to satisfy Plaintiff's pleading burden.

Further, because it is a reasonable inference from Plaintiff's allegations that Lewis Tree

outright denied his requested accommodation, the Court need not and does not assess the

plausibility of Plaintiff's allegations that Lewis Tree failed to engage in the required

interactive process.  *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 219

(2d Cir. 2001)  (conclusion that the plaintiff had presented "sufficient evidence of an

outright refusal to accommodate" obviated need for court to consider the employer's alleged failure to engage in the interactive process).

For these reasons, the Court will not dismiss Plaintiff's ADA failure-to-accommodate claim at this time.   However, the Court agrees with Defendants that Plaintiff's ADA retaliation claim is insufficiently pled.   "In order to establish a prima facie case of retaliation, [Plaintiff] must show that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity."   *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).   "[A] plaintiff bringing a retaliation claim under . . . the ADA . . . must plausibly allege that the retaliation was a but-for cause of the employer's adverse action." *Mehta v. City of New York*, No. 1:19-CV-03857-NG-VMS, 2022 WL 280460, at *7 (E.D.N.Y. Jan. 31, 2022) (quotation omitted).

Here, as with Plaintiff's FMLA retaliation claim, temporal proximity appears to be the only basis Plaintiff identifies for inferring a causal relationship.   (*See* Dkt. 17 at 15 (arguing that Plaintiff has adequately pled but-for causation because "Plaintiff was employed by Defendants for over a decade.   He took time off due to his cancer diagnosis and treatment.   Within months, he learns he has been terminated despite the fact that he requested leave for a qualifying reason.")).   However, as explained above, Plaintiff has not plausibly alleged that his protected activity of asking for medical occurred in sufficiently

close temporal proximity to his termination.[6]  Because Plaintiff has not plausibly alleged a causal connection between his request for an accommodation and his later termination, his ADA retaliation claim is dismissed.

## IV.    <u>Request for Leave to Amend</u>

Finally, the Court denies without prejudice Plaintiff's cursory request for leave to amend in the event any of his claims are dismissed.  (Dkt. 17 at 16 ("[I]n the event Plaintiff's claims are dismissed (which they should not be), Plaintiff respectfully requests leave to amend the complaint.")).  This request is not a proper motion for leave to amend and it fails to comply with this Court's Local Rules.  *See Wi3, Inc. v. Actiontec Elecs., Inc.*, 71 F. Supp. 3d 358, 363 (W.D.N.Y. 2014); *see also Food Holdings Ltd. v. Bank of Am. Corp.*, 423 F. App'x 73, 76 (2d Cir. 2011) (finding district court did not abuse its discretion in denying leave to amend complaint when request to amend was made "on the final page of their brief in opposition to defendants' motion to dismiss, in boilerplate language and without any explanation as to why leave to amend was warranted" and collecting cases).  If Plaintiff believes in good faith that his claims can be amended to address the deficiencies identified above, he may file a procedurally compliant motion for leave to amend.

---

[6]    While Plaintiff alleges that he provided Lewis Tree with doctor's notes from each of his chemotherapy appointments from January 21, 2020, to June 6, 2020 (Dkt. 1 at ¶ 27), he has not plausibly alleged that the provision of such doctor's notes constituted renewed requests for leave, as opposed to merely apprising Lewis Tree of his medical status.

## **CONCLUSION**

For the foregoing reasons, the Court denies Defendants' motion to dismiss (Dkt. 11) solely as to Plaintiff's ADA failure-to-accommodate claim against Lewis Tree and grants Defendants' motion to dismiss as to all other claims, which are dismissed without prejudice. The Clerk of Court is directed to terminate Robert Gaston as a defendant in this matter.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      March 10, 2022
            Rochester, New York