UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EDDIE GARCIA,

                              Plaintiff,

              vs.

LEWIS TREE SERVICE, INC. and
ROBERT GASTON,

                              Defendants.

Civil Action No.:

1:21-cv-06393-EAW-MWP

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO AMEND**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

PROCEDURAL HISTORY AND RELEVANT FACTS ........................................... 2

    A.    Plaintiff's Original Complaint ........................................................... 2

    B.    The Motion to Dismiss...................................................................... 2

    C.    The Decision and Order .................................................................... 3

    D.    The Rule 16 Conference, Scheduling Order, and Plaintiff's Denied Request to Amend the Scheduling Order ................................................. 5

ARGUMENT ................................................................................................................. 7

    I.    Standards on Motions for Leave to Amend ..................................... 7

    II.    Plaintiff Has Failed to Show Good Cause Under Rule 16................ 8

    III.    Plaintiff Has Failed to Meet the Requirements of Rules 15 and 21................... 13

        A.    Undue Delay ........................................................................ 14

        B.    The Proposed Amendments Would Be Futile ...................... 14

            1.    The Proposed Amendments Would Be Futile With Respect To The Individual Defendants ........................................................ 15

                a.    Personal Jurisdiction ..................................................... 15

                    i.    Legal Standard ................................................. 15

                    ii.    Facts Relevant to Personal Jurisdiction ............. 16

                    iii.    Neither Robert nor Chris Gaston is Subject to General or Specific Jurisdiction in New York ... 17

                        (a)    General Jurisdiction ............................... 17

                        (b)    Specific Jurisdiction............................... 18

                b.    Plaintiff's ADA Claims Would Be Futile ..................... 20

                c.    Plaintiff's FMLA Claim Would Be Futile .................... 20

2.      Plaintiff's NYSHRL Claims Would Be Futile For Lack Of
        Subject Matter Jurisdiction ........................................................ 22

3.      Plaintiff's FMLA Interference and ADA Retaliation Claims
        Still Fail ................................................................................ 23

        a.      FMLA Interference ....................................................... 23

        b.      ADA Retaliation .......................................................... 24

CONCLUSION ........................................................................................................ 25

## PRELIMINARY STATEMENT

Defendant Lewis Tree Service, Inc. ("Lewis Tree") submits this memorandum of law in opposition to Plaintiff's motion for leave to join an additional party and amend his complaint.

On March 10, 2022, this Court issued a Decision & Order dismissing five of Plaintiff's six claims against Lewis Tree and dismissing all claims against then-Defendant Robert Gaston. Plaintiff did not speak to his attorney at all for a month after this decision was issued, and did not speak "at length" about the Court's decision for about 6 weeks.  During this same period, Plaintiff's counsel agreed on a Proposed Scheduling Order with May 6, 2022 as the deadline for filing motions to join additional parties and amend pleadings, and then attended a F.R.C.P. Rule 16 conference at which he raised no objection to the same deadline.  One week later, he requested an extension of time to file such a motion, citing only his "calendar" and "case" obligations, and the fact that he had been unable to reach his client over the previous week. This Court denied his request to extend the deadline, and now Plaintiff brings this motion under F.R.C.P. Rules 16 and 15.

Plaintiff has not met his burden to show "good cause" under Rule 16, which is well-settled to mean "diligence." Plaintiff only spoke to his counsel twice between this Court's March 10th decision and the May 6th deadline for filing motions to join parties and amend, and only once "at length." Beyond this, Plaintiff's proposed amended complaint is based entirely on information he knew or should have known on May 6th, and likely long before that.  The motion should be denied on this ground alone.

Nor has Plaintiff met the even more lenient standards of Rules 15 and 21, because he engaged in undue delay and his proposed amendments would be futile.  The proposed amended complaint contains hardly any new facts, and recovers much of the same ground that the Court

1

already addressed in its March 10th Decision & Order.  Plaintiff again fails to establish any basis for personal jurisdiction over Robert Gaston, and Christopher Gaston lacks sufficient contacts with New York and in any event <u>did not even work for Lewis Tree at the relevant times</u>. Plaintiff again fails to allege that this Court has subject matter jurisdiction over his NYSHRL claims because he does not plausibly allege that any harm had an "impact" in New York. Plaintiff also again fails to state a claim for FMLA interference because he concedes that he was not able to return to work for months after the expiration of his 12-week leave.  Finally, Plaintiff again fails to state a claim for retaliation because his request for leave was too far removed from his termination, and to the extent Plaintiff argues his doctor allegedly faxed updates about his treatment and that such constituted renewed requests for leave this Court has already rejected Plaintiff's argument.

The motion should be denied in its entirety.

## PROCEDURAL HISTORY AND RELEVANT FACTS

### A.  Plaintiff's Original Complaint

On May 20, 2021, Plaintiff filed his complaint against Lewis Tree and Robert Gaston. (*See* Dkt. 1 (the "Complaint")).  The Complaint contains six causes of action: (1) interference with Plaintiff's rights under the Family Medical Leave Act ("FMLA"); (2) FMLA retaliation; (3) failure to provide reasonable accommodation under the Americans with Disabilities Act ("ADA"); (4) ADA retaliation; (5) discrimination under the New York State Human Rights Law ("NYSHRL"); and (6) NYSHRL retaliation. (*Id.*).

### B.  The Motion to Dismiss

On August 9, 2021, Defendants moved to dismiss the Complaint.  (*See* Dkts. 11-13).  The motion to dismiss made the following arguments: (1) the NYSHRL claims must be dismissed for

2

lack of subject matter jurisdiction because Plaintiff neither lived nor worked in New York; (2) all claims must be dismissed against Robert Gaston because he is not subject to personal jurisdiction in New York, and in any event the federal claims against him were inadequately plead; and (3) Plaintiff failed to state a claim against Lewis Tree on his four federal claims: FMLA interference, FMLA retaliation, ADA failure-to-accommodate, and ADA retaliation. (*See* Dkt. 13.).

## C.   The Decision and Order

On March 10, 2022, Hon. Elizabeth A. Wolford issued a Decision and Order on Defendants' motion to dismiss (Dkt. 21) (the "D&O"). The D&O granted the motion to dismiss with respect to five of Plaintiff's six claims against Lewis Tree, leaving only Plaintiff's ADA failure-to accommodate claim pending against Lewis Tree. (*Id.* at 22).  The D&O also dismissed all claims against Robert Gaston for lack of personal jurisdiction. *Id.*

With respect to Plaintiff's NYSHRL claims, the Court found that it lacks subject matter jurisdiction over the claims because Plaintiff failed to rebut Defendants' evidentiary showing that Plaintiff neither lived nor worked in New York, and Plaintiff never even alleged otherwise. (*Id.* at 6-7).  The Court's decision was further based on the well-settled principle that "if the affidavits submitted on a fact-based 12(b)(1) motion reveal the existence of factual problems related to jurisdiction, the plaintiff must present evidence of his own to counter the defendant's evidence." (*Id.* at 6-7) (citing *Amaya v. Ballyshear LLC*, 340 F. Supp. 3d 215, 219 (E.D.N.Y. 2018)).

The Court next found that Robert Gaston is not subject to personal jurisdiction in New York. (*Id.* at 7-9).  Plaintiff never alleged that Robert Gaston performed any work in New York or supervised Plaintiff in New York, let alone committed a tortious act within New York.  (*Id.* at

9).  The Court further found that Plaintiff failed to allege any involvement by Robert Gaston in the processing, consideration, or denial of any request for leave, in New York or otherwise. (*Id*.)

The Court found that Plaintiff did not adequately plead his FMLA interference claim. (*Id*. at 11-16).  Plaintiff did not plausibly allege that he was denied 12 weeks of leave. (*Id*. at 12-13). Nor did Plaintiff allege that he was denied any benefits to which he was entitled, because he was not medically able to return to work at the end of the 12-week FMLA period. (*Id*. at 13-14). The Court further found that because Plaintiff did not plausibly allege that he was actually denied any FMLA benefits to which he was entitled, he did not plausibly allege that any failure by Lewis Tree to provide notice of his rights interfered with his substantive FMLA rights. (*Id*. at 15).

The Court found that Plaintiff failed to state a claim for FMLA retaliation because he did not plausibly allege that he was terminated in close temporal proximity to his request for FMLA leave, and alleged no other facts that would give rise to an inference of retaliatory intent. (*Id*. at 17).

As to Plaintiff's ADA retaliation claim, the Court found that Plaintiff failed to allege a claim because he did not plausibly allege that his protected activity of asking for medical leave occurred in sufficiently close temporal proximity to his termination. (*Id*. at 20). The Court specifically noted that while Plaintiff alleged that he provided Lewis Tree with doctor's notes from each of his chemotherapy appointments from January 21, 2020 to June 6, 2020, "he has not plausibly alleged that the provision of such doctor's notes constituted renewed requests for leave, as opposed to merely apprising Lewis Tree of his medical status." (*Id*. at fn. 6).

The Court denied Defendants' motion only with respect to Plaintiff's ADA failure-to-accommodate claim against Lewis Tree, leaving that as the sole remaining claim in this case. (*Id*. at 20).

14144626.1

The Court also denied without prejudice Plaintiff's "cursory request for leave to amend in the event any of his claims [were] dismissed" (*Id.* at 21), and instructed Plaintiff that "if Plaintiff believes in good faith that his claims can be amended to address the deficiencies identified" in the Court decision, that Plaintiff would be permitted to file "a procedurally compliant motion for leave to amend." (*Id.*)

### D. The Rule 16 Conference, Scheduling Order, and Plaintiff's Denied Request to Amend the Scheduling Order

Lewis Tree filed its answer on March 31, 2022. (Dkt. 24). On April 7, 2022, Hon. Mark W. Pedersen, United States Magistrate Judge, issued an order scheduling a Rule 16 conference for April 27, 2022. (Dkt. 26). On April 20, 2022, counsel for both parties submitted an agreed-upon joint Proposed Discovery Plan to the Court. (Dkt. 27). The Proposed Joint Discovery Plan contained a deadline of May 6, 2022 to file motions to join other parties and amend the pleadings. (*Id.*).

On April 27, 2022, Judge Pedersen held the Rule 16 conference by telephone, which was attended by Jonathan Shalom, Esq. as counsel for Plaintiff and Jessica Moller, Esq. as counsel for Lewis Tree. (Dkt. 29). At the Rule 16 conference, Mr. Shalom did not raise any issue with the May 6th deadline for motions to join additional parties and amend the pleadings or otherwise suggest that Plaintiff would have any difficulty meeting that deadline. (*See* Declaration of Jessica Moller, sworn to June 17, 2022 ("Moller Decl.") ¶ 5). On April 27, 2022, Judge Pedersen issued a text order containing a minute entry from the Rule 16 conference, which stated in part that "Parties agree to a proposed schedule, Scheduling Order to be issued." (Dkt. 29). Shortly thereafter on April 27th, Judge Pedersen issued the Scheduling Order memorializing the agreed-upon May 6th deadline to file motions to join other parties and amend the pleadings. (Dkt. 28).

14144626.1

On the morning of May 4, 2022, one week after the Rule 16 conference and just two days before the deadline, Mr. Shalom emailed Ms. Moller seeking consent for a three-week extension of the deadline to serve initial disclosures, to join additional parties and amend the pleadings. (*See* Moller Aff. ¶ 7, Ex. 1).  As the basis for his request, Mr. Shalom wrote: "Due to current calendar obligations this week, I am unable to meet the 5/6/2022 deadline to Join Parties/Amend Pleadings and provide Initial Disclosures." (*Id*.).

Later in the morning of May 4, 2022, Ms. Moller responded that while she ordinarily consents to reasonable requests for extensions, and that she would consent with respect to the service of initial disclosures, but that absent an emergency, she could not consent to a request to add parties or amend the pleadings. (*See* Moller Decl. ¶ 8, Ex. 2).  Ms. Moller specifically noted that Plaintiff had been on notice of the need to file a proper motion to amend since the D&O was issued on March 10th.  (*Id*). Ms. Moller further noted that the parties had just recently agreed to the May 6th deadline and that Mr. Shalom should have, but did not, raise any concerns about it during the April 27th  Rule 16 conference. (*Id*).

Late in the afternoon of May 4, 2022, without further communication to Lewis Tree's counsel and despite the fact that he had only requested a three-week extension in his email to Ms. Moller (*see id.*), Mr. Shalom filed a letter motion seeking a longer 30-day extension of the deadline to serve initial disclosures and file motions to add parties and amend the pleadings. (Dkt. 30; Moller Aff. ¶ 9).  In this letter, Mr. Shalom cited as the "reason for the request" that "Plaintiff was unable to reach his client this past week in addition to the current back-to-back calendar and case obligations this week." (*Id*).

Later on May 4, 2022, Ms. Moller filed an objection to Mr. Shalom's request citing all of the reasons that she had earlier provided to Mr. Shalom. (Dkt. 31).  Ms. Moller noted that she

14144626.1

informed Mr. Shalom that she would have consented to the request in the event of emergency, but that Mr. Shalom had not communicated one before filing his motion for an extension. (*Id*).

The May 6th deadline passed with no extension granted and no motion filed.

On May 18, 2022, Nathan A. Jones, Law Clerk to Hon. Mark Pedersen, informed counsel by email that Magistrate Pedersen would not grant Plaintiff's request to modify the deadlines in the Scheduling Order, and any motion to amend the pleadings under Rule 16(b)(4) must be filed by June 3, 2022. (Moller Aff. ¶ 10, Ex 3).  Plaintiff filed this motion on June 3, 2022, 28 days after the deadline in the Scheduling Order.

## ARGUMENT

### I.   Standards on Motions for Leave to Amend

"Rule 16 requires the Court to issue a scheduling order early in the case, which 'must limit the time to join other parties, amend the pleadings, complete discovery, and file motions.'" *Klinkowitz v. Jamaica Hosp. Med. Ctr.*, No. 20-CV-4440-EK-SJB, 2022 WL 818943, at *2 (E.D.N.Y. Mar. 17, 2022) (citing Fed. R. Civ. P. 16(b)(3)(A)). "By limiting the time for amendments, the rule is designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000) (quotations omitted).

"Where, as here, a scheduling order governs amendments to the complaint, the Second Circuit has held that the lenient standard under Rule 15(a) or Rule 21 must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." *Klinkowitz*, 2022 WL 818943, at *2 (citations omitted). "In other words, 'the Rule 16(b) standard controls any decisions to alter a scheduling order for purposes of making pleading amendments and it must be satisfied before determining whether an

7

amendment should be permitted under Rule 15.'" *Id*. (citing 6A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 1522.2 (3d ed. 2021).

Under Rule 15, where, as is the case here, a party's right to amend as of right has passed, "[t]he court should freely give leave when justice so requires.'" *Id*. (citing Fed. R. Civ. P. 15(a)(2)). "Rule 15(a) amendments are to be freely granted 'in the absence of a showing by the nonmovant of prejudice, ... bad faith… dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed ... [or] futility of the amendment." *Klinkowitz*, 2022 WL 818943, at *3–4 (E.D.N.Y. Mar. 17, 2022) (citations omitted).

Because Plaintiff's motion also seeks to add a new party, it is "governed by Rule 21, which provides that 'the court may at any time, on just terms, add or drop a party,' .... However, 'the same standard of liberality applies under either Rule.'" *Id*. (citations omitted). *See also*, *Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 40 (S.D.N.Y. 2016) ("As with amendments under Rule 15, courts may deny joinder of parties pursuant to Rule 21 upon a showing of undue delay, bad faith, prejudice, or futility.").

However, "[w]here a motion to amend is filed after the deadline set by the Court to do so, it is 'subject to the more demanding standard of Rule 16(b), which requires 'good cause' for leave to amend." *Id*. Plaintiff has the burden to show good cause under Rule 16(b)(4). *Villa v. Sw. Credit Sys., L.P.*, 2020 WL 3808911, *3 (W.D.N.Y. June 10, 2020) *adopted by* 2020 WL 3802936 (W.D.N.Y. July 7, 2020) (citations omitted).

## II.    Plaintiff Has Failed to Show Good Cause Under Rule 16

Plaintiff's motion must be denied unless he has shown good cause for amending the Rule 16 scheduling order. Good cause in this context depends on the diligence of the moving party, and, to satisfy the standard, the movant must demonstrate that it has been diligent in its effort to

meet the Court's deadlines." *Klinkowitz*, 2022 WL 818943, at *2 (citations omitted). "To satisfy the good cause standard the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Id. citing Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2010) (quotations omitted). Importantly, "the good cause standard is not satisfied when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Id.* (citation omitted).

There can be no reasonable assertion that Plaintiff acted with diligence to meet the Court's ordered deadline of May 6th. Plaintiff was on notice since this Court's decision on March 10th that five of his six claims against Lewis Tree were dismissed, that all claims against Robert Gaston were dismissed, and that he would need to file a procedurally-proper motion with this Court in order to seek leave to amend his complaint. Though Plaintiff's counsel attempted to contact Plaintiff "early the following week," he did not actually speak to Plaintiff for several weeks in "mid-April." (Shalom Decl. ¶¶ 4-5). It was not until "late April"—approximately two weeks later, around the time of the Rule 16 conference, and approximately six weeks after this Court's decision was issued—that Plaintiff's counsel spoke to Plaintiff "at length" about the D&O and "information concerning his claims." (*Id.* ¶ 10). The fact that it took Plaintiff's counsel approximately 6 weeks, from March 10th until "late April" to talk "at length" about the D&O that dismissed all claims against Robert Gaston and five of his six claims against Lewis Tree clearly demonstrates a lack of diligence.

Though Plaintiff's counsel does not provide the actual dates on which his two April conversations with Plaintiff took place, both "mid April" and "late April" are near in time to April 20th, by which time Plaintiff's counsel had agreed to the May 6th deadline set forth in the Proposed Scheduling Order. Nevertheless, despite the pending deadline, Plaintiff's counsel was

9

"unable to complete his [late April call with Plaintiff] to determine what facts, if any, would support a decision to amend the pleadings." (*Id*. ¶ 11). Plaintiff's counsel was then, "regrettably… unable to reach Plaintiff when he was with someone who could interpret for him prior to the May 6, 2022 deadline to amend the pleadings." (*Id*. ¶ 12).  The fact that Plaintiff's counsel only spoke to Plaintiff twice between the March 10th issuance of the D&O and the May 6th deadline to amend pleadings demonstrates, at best, a lack of diligence. Moreover, during the late April call, Plaintiff's counsel was well aware that the deadline was little more than one week away, and even if Plaintiff had to end that particular call "due to the amount of time it took … to discuss the actual decision," Plaintiff's counsel could have at least stressed the necessity of speaking again promptly and ensured that he did so sufficiently in advance of the May 6th deadline.  With reasonable diligence, Plaintiff could have made himself available for that call.  .

Plaintiff's counsel's repeated citation of a language barrier and difficulty reaching Plaintiff when a "family member or someone present with Plaintiff" was also available to translate—an issue that has been raised for the first time in Plaintiff's motion[1]—does not excuse these extensive delays, limited number of actual calls, and lack of urgency about the pending deadline.  If it became clear that Plaintiff's family members could not reliably serve as interpreters, Plaintiff's counsel could have alternatively retained the services of a professional interpreter to join their telephone call.  If Plaintiff was not able to reliably speak on the telephone, Plaintiff's counsel could also have arranged for a meeting over Zoom, Teams or other virtual means where he could see and communicate more effectively with Plaintiff, or traveled to

---

[1] Plaintiff's counsel's extension request to Ms. Moller did not cite any difficulty reaching Plaintiff; it only cited "current calendar obligations this week." (Moller Decl. Ex. 1).  In his letter motion to the Court, Plaintiff's counsel again cited his case obligations, without specifying what they were, and for the first time cited his inability to contact Plaintiff as part of the basis for his request.  Neither request mentions a language barrier or need for interpreter.

Pennsylvania to speak in-person with his client.  Plaintiff will presumably require the services of

an in-person interpreter for deposition preparation and trial, so retaining one for an important

conversation about basic facts for an amended pleading would be entirely reasonable and should

have been within his expectations about the costs of this litigation. Plaintiff's public allegations

against Lewis Tree are serious, and his inability to even take these steps to meet a Court-ordered

deadline demonstrates a lack of diligence in pursuing them.

 Plaintiff's motion must be denied for the additional independent reason that the proposed

amendment rests on information that he knew or should have known before the May 6th deadline.

Plaintiff's proposed amended complaint (Dkt. 32.3) ("PAC") contains the following additional

allegations to supplement those in the original Complaint:

(1) During the relevant period, Plaintiff performed work in New York when he was called upon for storm work (PAC ¶ 5).

(2) Robert and Chris Gaston each held a supervisory or managerial role over Plaintiff (PAC ¶¶ 10-11).

(3) Chris Gaston was employed by Lewis Tree at all relevant times. (PAC ¶ 11).

(4) Lewis Tree terminated Plaintiff's employment in May 2020 (PAC ¶ 16).

(5) Had Defendants, including Robert and Chris Gaston, notified Plaintiff of his FMLA rights, he would have spoken with his doctor and sought to return to work such that he could avail himself of the return-to-work rights under FMLA. (PAC ¶¶ 27-31).

(6) Every time Plaintiff submitted documentation and notes concerning his prognosis, he effectively renewed his requests for leave related to his disability. (PAC ¶ 33).

(7) Plaintiff kept Robert and Chris Gaston apprised of his prognosis, and informed them that his doctor informed Lewis Tree that Plaintiff should be able to return to work by the end of June 2020. (PAC ¶¶ 34, 36).

(8) Plaintiff only later learned that he had been terminated on May 22, 2020 (PAC ¶ 51).

(9) Robert Gaston participated in the decision-making process with Lewis Tree to terminate Plaintiff's employment on May 22, 2020. (PAC ¶ 73).

11

All of these alleged facts were in Plaintiff's possession on May 6, 2022. He has not even argued that he learned any of these facts after the deadline passed. What is more, all but arguably one of these facts were almost certainly in Plaintiff's knowledge and possession when he filed the original Complaint. Giving Plaintiff every benefit of doubt, the only potential exception is perhaps the exact date of Plaintiff's termination, but Plaintiff has known this date since at least August 9, 2021 when Defendants filed the Robert Gaston affidavit in connection with their motion to dismiss. (Dkt. 12). Most of the "new" facts in the PAC do not actually contain new information; they are simply elaborations on the same facts that Plaintiff already included in his initial Complaint which this Court held deficient. Those that are raised first in the PAC, such as the allegations about Christopher Gaston or that Plaintiff performed emergency storm response work in New York, would clearly have been known to Plaintiff during his employment, well before his leave, termination or any other events related to this case, and without question when his original Complaint was filed with this Court. This alone must result in finding that Plaintiff was not diligent. *See*, *e.g.*, *Dervan v. Gordian Grp. LLC*, 2018 WL 4278287, *1 (S.D.N.Y. June 20, 2018) ("A party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." (citation omitted)).

To the extent that Plaintiff argues that he has shown good cause under Rule 16 because there is no prejudice to Defendant, this argument must be rejected. Although the Court may use discretion to "consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice [the non-moving party]," *id*. *citing Kassner v. 2nd Ave. Delicatessen Inc*., 496 F.3d 229, 244 (2d Cir. 2007), the fact "that there is no prejudice to [the non-moving party] is not sufficient to establish good cause; the lack

of diligence and failure to follow the Court's deadlines is sufficient to deny amendment."
*Klinkowitz*, 2022 WL 818943, at *3 *citing Gullo*, 540 F. App'x at 47. "Under Rule 16(b) ... the
mere absence of prejudice, bad faith, futility, or similar factors is not sufficient to constitute good
cause." *Id*. (citations omitted). Rule 16's "standards may not be short-circuited by an appeal to
those of Rule 15." *Parker*, 204 F.3d at 340 (citation omitted).

Plaintiff has clearly failed to meet his burden to establish good cause for his proposed
revision to the Scheduling Order under Rule 16(b). His motion can and should be denied on that
basis alone, without consideration of the standards under Rules 15 and 21.

### III.   Plaintiff Has Failed to Meet the Requirements of Rules 15 and 21

But even it, *arguendo*, Plaintiff could somehow establish good cause under Rule 16, he
must also satisfy the requirements of Rules 15 and 21 for leave to amend his complaint and add a
party.

"Rule 15(a) amendments are to be freely granted 'in the absence of a showing by the
nonmovant of prejudice, ... bad faith... dilatory motive on the part of the movant, repeated
failure to cure deficiencies by amendments previously allowed ... [or] futility of the amendment."
*Klinkowitz*, 2022 WL 818943, at *3-4 (citations omitted). Because Plaintiff seeks to add Chris
Gaston as a new party, the motion is also "governed by Rule 21, which provides that 'the court
may at any time, on just terms, add or drop a party,' .... However, 'the same standard of liberality
applies under either Rule.'" *Id*. at *4 *citing Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91,
96-97 (S.D.N.Y. 2010); *see also Mason Tenders*, 318 F.R.D. at 40 ("As with amendments under
Rule 15, courts may deny joinder of parties pursuant to Rule 21 upon a showing of undue delay,
bad faith, prejudice, or futility.").

Here, Plaintiff has failed to satisfy Rules 15 and 21 because of undue delay and futility.

14144626.1

### A. Undue Delay

"[A] court properly denies leave to amend 'where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties.'" *DeCastro v. City of New York*, 2020 WL 4932778, *10 (S.D.N.Y. Aug. 24, 2020) *quoting Grace v. Rosenstock*, 228 F.3d 40, 53-54 (2d Cir. 2000). "[A]lthough delay alone will not negate a plaintiff's showing of good cause ... 'the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.'" *Id. quoting Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).

Here, for many of the same reasons that he failed to show diligence under Rule 16, Plaintiff engaged in undue delay before seeking this amendment.  Plaintiff has been aware of the need to file a properly supported motion since the D&O was issued on March 10th.  All of the relevant facts in the PAC have been known to Plaintiff during the two years since Lewis Tree terminated his employment, and not only before but certainly since he filed the initial Complaint. After the Court issued the D&O dismissing all claims against Robert Gaston and five of his six claims against Lewis Tree, and despite the Court's ruling on the need to file a proper motion, Plaintiff took a month and a half to speak to his attorney at length about the claims, ended the call without finishing, and then failed to speak again for several more weeks.

### B. The Proposed Amendments Would Be Futile

Plaintiff's motion should be denied for the additional reason that the proposed amendments would be futile.

"Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Berlin v. Jetblue Airways Corp.*, 436 F. Supp. 3d 550, 574 (E.D.N.Y. 2020) *citing*

*Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017).  Proposed

amendments are futile when their allegations would fail to establish personal jurisdiction over

one of the defendants, or subject matter jurisdiction over one of the claims. *See*, *e.g.*, *Bergrin v.*

*United States*, 2022 WL 912280, \*14 (S.D.N.Y. Mar. 28, 2022) ("courts have found leave to

amend futile when they lack personal jurisdiction to litigate the matter" (citing cases)); *Latino*

*Quimica–Amtex S.A. v. Akzo Nobel Chemicals B. V.*, 2005 WL 2207017, \* 4 (S.D.N.Y. Sept. 8,

2005) ("Where a court would lack subject matter jurisdiction over the case as pleaded in the

proposed amendment, the court may deny leave to amend on the ground of futility.").

   **1. Plaintiff's Proposed Amendments Would Be Futile With Respect To The**
     **Individual Defendants**

   The PAC again names Robert Gaston as a defendant, even though the Court dismissed

the Complaint against him for lack of personal jurisdiction, and also seeks to add Christopher

Gaston as a named defendant.  However, the PAC would be futile because: (1) the Court would

still lack personal jurisdiction over Robert Gaston and there is no basis for personal jurisdiction

over Christopher Gaston; (2) there is no individual liability under the ADA; and (3) the PAC

would fails to adequately plead individual liability under FMLA.

    **a. Personal Jurisdiction**

      **i. Legal Standard**

   "[T]he plaintiff bears the burden of showing that the court has jurisdiction over the

defendant."  *Gilbert v. Indeed, Inc*., 2021 WL 169111, \*8 (S.D.N.Y. Jan. 19, 2021) *citing Metro.*

*Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  On a motion to dismiss

for lack of personal jurisdiction, although the trial court "construe[s] the pleadings and affidavits

in the light most favorable to plaintiffs" (*id*.), the court must "not draw argumentative inferences

in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2011*, 714 F.3d 659, 673 (2d Cir. 2013).

"A federal district court exercises personal jurisdiction over a party in accordance with the law of the forum state, subject to the requirements of due process under the United States Constitution." *Scott v. ProClaim Am., Inc.*, 2015 WL 3851243, *3 (E.D.N.Y. June 22, 2015) (citation omitted). "In New York, courts may exercise either general or specific jurisdiction over defendants. General jurisdiction allows courts in New York to adjudicate all claims against an individual or a corporation, even those unrelated to its contacts with the state." *Id. citing Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014). "In contrast, specific jurisdiction 'depends on an affiliation between the forum [state] and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) (internal quotation marks and citations omitted)).

## ii.     Facts Relevant to Personal Jurisdiction

Robert Gaston ("Robert") has lived in Pennsylvania his entire life. (*See* Dkt. 12 at ¶ 2).[2] He has been employed by Lewis Tree since 2009, and a General Foreman since approximately 2010. (*Id.* ¶ 3). He has never performed work in New York, and no Lewis Tree employee has ever performed work there under his supervision. (*Id.* ¶ 4). He does not travel to New York for any personal reasons, and has no personal business connections to the state. (*Id.* ¶¶ 5-7). In his role as General Foreman, he has no role in Lewis Tree employees' requests for health, medical, or disability-related leaves of absence, including any role in advising employees about what leave, if any, may be available to them. (*Id.* ¶ 8). Robert had no involvement with any decision

---

[2] These facts are based on the Affidavit of Robert Gaston, sworn to August 5, 2021, which Defendants submitted with their motion to dismiss the Complaint (Dkt. 12).

made by Lewis Tree regarding Plaintiff's medical leaves of absence, the termination of his employment, or any of the decisions and actions at issue in this litigation. (*Id*. ¶ 9). Robert first learned that Plaintiff's employment with Lewis Tree was terminated when he received an email on May 22, 2020 notifying him that Plaintiff's separation from employment had already been effectuated that day. (*Id*. ¶ 10).

Christopher Gaston ("Chris"), Robert's brother, currently lives in Pennsylvania, and has never been a resident of New York or owned or rented property there. (*See* Affidavit of Christopher Gaston, sworn to June 10, 2022 ("C. Gaston Aff."). Chris has been employed by Lewis Tree during two different time periods—first from 2006-2014, and subsequently from February 2021 to present. (*Id*. ¶ 3). His current position is Supervisor, in which capacity he oversees general foremen in Maryland and New Jersey. (*Id*). Chris does not perform work in New York. (*Id*. ¶ 4). The only times he has even entered the state in the past three years were to attend one three-day conference, and when passing through on the highway without staying over. (*Id*). He does not travel to New York for any personal reasons and does not conduct any personal business in New York or in interstate commerce. (*Id*. ¶¶ 5-7). Chris has had no contact with Plaintiff since at least 2014, and until being made aware of the PAC, had no idea that Plaintiff had cancer, took leave, or was terminated from Lewis Tree. (*Id*. ¶ 8). Chris did not even work at Lewis Tree in 2019 and 2020 which are the only times relevant in this action, and therefore did not, and could not have had anything to do with Plaintiff's employment, leave, or termination. (*Id*. ¶ 10).

### iii.   Neither Robert Nor Chris Gaston Is Subject To General Or Specific Jurisdiction In New York

#### (a)   General Jurisdiction

"A defendant is subject to personal jurisdiction if he is engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in this jurisdiction." *Gilbert v. Indeed, Inc*., 2021 WL 169111, *24 (S.D.N.Y. Jan. 19, 2021) *citing Laufer v. Ostrow*, 55 N.Y.2d 305 (1982). Neither Robert or Chris Gaston resides in New York, spends any significant amount of time in the state, or transacts business there in their personal capacity. The fact that Robert and Chris work for Lewis Tree, a company based in New York, does not confer general jurisdiction. *See*, *e.g.*, *Brinkmann v. Adrian Carriers, Inc*., 29 A.D.3d 615 (2d Dep't 2006) ("An individual cannot be subject to jurisdiction under CPLR 301 unless he is doing business in New York as an individual rather than on behalf of a corporation."). Neither Robert nor Chris is subject to general jurisdiction in New York.

### (b) Specific Jurisdiction

Specific jurisdiction exists under CPLR 302(a) only when the "defendant's activities [in New York] were purposeful, and that there was a substantial relationship between the transaction and the claim asserted." *Pilates, Inc. v. Pilates Inst., Inc*., 891 F. Supp. 175, 179 (S.D.N.Y. 1995) *citing Kreutter v. McFadden Oil Corp*., 71 N.Y.2d 460 (1988). None of its three subsections can be satisfied here with respect to either Robert or Chris Gaston.

CPLR 302(a)(1): To establish jurisdiction under CPLR 302(a)(1), Plaintiff must allege that: (1) Robert or Chris has "transacted business" in New York; and (2) the claim asserted arises from that business activity. *Eades v. Kennedy PC L. Offs*., 799 F.3d 161, 168 (2d Cir. 2015). Neither Gaston has transacted any business in New York in his personal capacity. (*See* Dkt. 12 at ¶¶ 5-7; C. Gaston Aff. ¶¶ 5-7). Plaintiff's claims arise from alleged business activity performed as employees of Lewis Tree. However, Robert has performed no work for Lewis Tree in New York (Dkt. 12 at ¶ 4), and Chris only attended a brief conference in New York and passed

through New York on the highway to reach work destinations in New England. (C. Gaston Aff. ¶ 4). None of these activities have anything to do with Plaintiff's claims.[3]

CPLR 302(a)(2): Section 302(a)(2) provides for jurisdiction over a defendant who "commits a tortious act within the state." The PAC makes no allegation that either Robert or Chris was in New York when they committed any allegedly wrongful act. For the reasons stated above, neither Robert nor Chris performed any work activity in New York related to Plaintiff's claims.

The D&O found that Robert was not subject to jurisdiction in New York under CPLR 302(a)(2), because Plaintiff never alleged that "Gaston performed any work in New York or supervised Plaintiff in New York, let alone committed a tortious act in New York." D&O at 9. The Court also found that Plaintiff failed to allege that Robert Gaston had any role in the "processing, consideration, or denial of any request for leave, in New York or otherwise." *Id*.

The PAC does not cure these specific deficiencies with respect to Robert, or now, Chris. While Plaintiff alleges in cursory fashion that he "performed work in the State of New York when he was called upon for storm work," (PAC ¶ 5), and that both Gastons "held a supervisory or managerial role over the Plaintiff," (PAC ¶¶ 10-11), Plaintiff never alleges that either of the Gastons supervised Plaintiff's work in New York. Further, while Plaintiff alleges in the PAC that they failed to provide Plaintiff with notice of his FMLA rights, (PAC ¶ 28), that Plaintiff apprised them of his prognosis (PAC ¶ 34), that Plaintiff informed them he would be able to return to work by the end of June 2020 (PAC ¶ 35), and that they participated in the decision to

---

[3] Chris did not even work at Lewis Tree in 2019, when Plaintiff's leave began, or in 2020, when Plaintiff's leave continued and his employment was eventually terminated. Chris could not have had anything to do with Plaintiff's claims in New York or anywhere else. (*See* C. Gaston Aff. ¶ 10).

terminate Plaintiff's employment (PAC ¶ 52), the PAC fails to allege that either Robert or Chris had any involvement in the "processing, consideration, or denial of any request for leave."

CPLR 302(a)(3): To establish jurisdiction under CPLR 302(a)(3), Plaintiff must allege: "(1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce." *Gilbert,* 2021 WL 169111 at \*29 *citing Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295 (2011); N.Y. C.P.L.R. § 302(a)(3)(ii). "Under Section 302(a)(3), a defendant's 'act must have caused injury to a person or property within New York.'" *Id. citing Doe v. Del. State Police*, 939 F. Supp. 2d 313, 325-26 (S.D.N.Y. 2013). The PAC does not plausibly allege that any wrongful acts by either Robert or Chris Gaston caused injury in New York. To the contrary, Plaintiff has never alleged that he even entered New York following the commencement of his leave or his termination. Further, the PAC has not alleged that either of the Gastons derive substantial revenue from interstate commerce, and both Gaston affidavits establish that they do not.

### b.      Plaintiff's ADA Claims Would Be Futile

Despite Plaintiff's proposed amendments, his claims against Robert and Chris Gaston under the ADA would still be dismissed because there is no individual liability under the ADA. *See, e.g., Gomez v. New York City Police Dep't*, 191 F. Supp. 3d 293, 302-303 (S.D.N.Y. 2016).

### c.      Plaintiff's FMLA Claim Would Be Futile

Despite Plaintiff's proposed amendments, his claims against Robert and Chris under the FMLA would likewise be futile. Individuals can only be held liable for FMLA violations when

they are deemed to be the "employer" under the statute, meaning "whether the alleged [individual] possessed the power to control the worker [ ] in question, with an eye to the 'economic reality' presented by the facts of each case." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422 (2d Cir. 2016).  In order to determine whether this standard has been met, courts are required to consider "a nonexclusive and overlapping set of factors" that are intended to "encompass [ ] the totality of circumstances," and which can include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id*. (citations omitted).  As explained by the Second Circuit, in analyzing these factors in the context of potential individual liability under the FMLA, the underlying question that must be answered is whether the individual "controlled in whole or in part plaintiff's rights under the FMLA." *Id*. at 422-23 (citations omitted).  If the answer to that question is no, as is the case here, the individual cannot be held liable under the FMLA.

Here, the PAC only alleges that Robert and Chris "held a supervisory or managerial role" over Plaintiff (PAC ¶¶ 10-11); that they failed to provide Plaintiff with notice of his FMLA rights (PAC ¶ 28); that Plaintiff kept Robert and Chris apprised of his diagnosis (PAC ¶ 34); that Plaintiff informed Robert and Chris he would be able to return to work by the end of June 2020 (PAC ¶ 36); and that they participated in the decision to terminate Plaintiff. (PAC ¶¶ 52, 73). None of this is sufficient to plausibly allege that either Gaston is an "employer" under the FMLA. There is no allegation that either Gaston had the power to hire and fire, determined the method and rate of payment, or maintained employment records.  The affidavits of Robert and Chris confirm that they had no such authority over Plaintiff, and nothing to do with his medical

records, leave, benefits, or termination. Chris did not even work for Lewis Tree at the relevant times.

### 2.   Plaintiff's NYSHRL Claims would be Futile for Lack of Subject Matter Jurisdiction

The D&O dismissed Plaintiff's NYSHRL claim because Plaintiff lives in Pennsylvania and failed to rebut Defendant's sworn affidavit indicating that he has never worked for Lewis Tree in New York. D&O at 6.  In the PAC, Plaintiff apparently tries to cure this deficiency by adding the single sentence, "during the relevant period, Plaintiff performed work in the State of New York when he was called upon for storm work." (PAC ¶ 5).  But Plaintiff does not define "relevant period," state when or for how long he allegedly worked in New York, or plausibly allege that Defendant's alleged wrongful conduct occurred when Plaintiff was in New York.  In fact, the entirety of Plaintiff's case relates to when he was on a medical leave and terminated, which undermines any possible claim that the alleged wrongful conduct occurred while Plaintiff was actively working allegedly performing storm work in New York.

This is not sufficient to allege that this Court has subject matter jurisdiction over Plaintiff's NYSHRL claims. Plaintiff "must plead and prove that the alleged discriminatory conduct had an impact in New York" (*Hoffman v. Parade Publications*, 15 N.Y.3d 285, 291 (2010)) by pleading that the plaintiff him/herself was directly affected within New York State. *Doner-Hendrick v. New York Inst. of Tech*., 2011 WL 2652460, *8 (S.D.N.Y. July 6, 2011) (the "'impact' within the state that plaintiff must plead ... is the direct effect of a discriminatory act on a protected individual").  Even if Plaintiff performed work in New York during discrete times, there is still no plausible allegation that the injuries alleged in the Complaint had an "impact" in New York because Plaintiff has consistently resided in Pennsylvania during and after his leave and at the time of his termination.

### 3.  FMLA Interference and ADA Retaliation Claims Still Fail

In the PAC, Plaintiff attempts to revive two of his three federal claims that were dismissed in the D&O—FMLA interference and ADA retaliation.[4] But the PAC provides no new facts that could remedy the pleading deficiencies identified in the D&O.

### a.  FMLA Interference

The D&O dismissed this claim because Plaintiff did not plausibly allege that any failure by Lewis Tree to give Plaintiff notice of his rights interfered with his substantive FMLA rights. D&O at 15. Specifically, Plaintiff did not plausibly allege that he was denied 12 weeks of leave or that he was medically able to return to work at the end of the 12-week period. (D&O at 15).

The PAC does not cure that deficiency.  Plaintiff admits that his doctor did not clear him to return to work until July 6, 2020.  (PAC ¶ 37).  He attempts to work around this fatal admission by alleging that "if Plaintiff had known that he would have lost his return-to-work rights, he could have spoken with his doctor early on about his treatment schedule and would have sought to return to work within the twelve (12) month [sic] period such that he could avail himself of the right to return to work as contemplated by the FMLA." (PAC ¶ 30).  This "allegation" is mere speculation about whether a drastic change to the schedule of his cancer treatments could have been possible. Plaintiff never even alleges that it would have actually been possible had he spoke to his doctors about it.  Considering the fact that Plaintiff was ultimately on leave for approximately 7.5 months (from November 2019 until July 6, 2020), or approximately 30 weeks, it is not plausible that Plaintiff's doctors would have cleared him to return to work approximately 18 weeks early simply because Plaintiff would have "sought" to return to work at the conclusion of the 12-week period.  The fact remains unchanged that

---

[4] The PAC does not include the claim for FMLA retaliation that appeared in the Complaint and was dismissed by the D&O.

Plaintiff admits that he was not cleared to return to work at the end of his 12-week FMLA leave, and his FMLA interference claim would be dismissed. *See*, *e.g*., *Donnellan v. New York City Transit Auth*., 1999 WL 527901, \*5 (S.D.N.Y. July 22, 1999) ("[P]laintiff also fails to state a claim for interference with her right to be restored to her position. This right only obtains where the plaintiff is able to return to her position at the conclusion of her FMLA leave period.").

**b.      ADA Retaliation**

The D&O held that Plaintiff failed to allege retaliation under the ADA because he did not plausibly allege that his protected activity of asking for medical leave occurred in sufficiently close temporal proximity to his termination. (D&O at 20). The Court specifically noted that while Plaintiff alleges that he provided Lewis Tree with doctor's notes from each of his chemotherapy appointments from January 21, 2020 to June 6, 2020, "he has not plausibly alleged that the provision of such doctor's notes constituted renewed requests for leave, as opposed to merely apprising Lewis Tree of his medical status." (*Id*. at fn. 6).

The PAC does not add any facts that would change this conclusion.  Plaintiff merely alleges that "every time Plaintiff sought medical treatment, he would submit doctor's notes to Defendants, beginning on January 21, 2020 and occurring once every other week until June 6, 2020." (PAC ¶ 71).  This allegation was made in the original Complaint. (*See* Dkt. 1 ¶ 27). Plaintiff's proposed new allegation that "each of these notes constituted requests for leave," (PAC ¶72), is actually just argument about the same exact facts the Court already considered and rejected in the D&O.  The PAC does not cure the failure noted by this Court in the D&O— namely, that Plaintiff's alleged provision of doctor's notes constituted renewed requests for leave, as opposed to a mere apprising to Lewis Tree of Plaintiff's medical status.  (D&O at fn. 6)

## CONCLUSION

For all of the foregoing reasons, Plaintiff's motion for leave to amend and to join additional parties should be denied in its entirety.

Dated:   June 17, 2022

<div style="margin-left: auto;">

Respectfully submitted,

BOND, SCHOENECK & KING PLLC

By: _____

Jessica C. Moller, Esq.
1010 Franklin Avenue, Suite 200
Garden City, NY 11530
(516) 267-6332 / jmoller@bsk.com

Peter H. Wiltenburg, Esq.
Avant Building – Suite 900
200 Delaware Avenue
Buffalo, New York 14202
(716) 416-7000 / pwiltenburg@bsk.com

*Attorneys for Defendants*

</div>

14144626.1